## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| JESSICA GAUL, individually and on behalf of all others similarly situated, <br><br> v. <br><br> ACCURA HEALTH VENTURES, LLC; AMERICAN HEALTHCARE MANAGEMENT SERVICES, L.L.C. d/b/a ACCURA HEALTHCARE MANAGEMENT SERVICES; ACCURA HEALTHCARE HOLDINGS LLC; and AMERICAN HEALTHCARE ASSOCIATES, INC. d/b/a ACCURA HEALTHCARE OF IOWA | **Case No.** 4:22-cv-154 <br> FLSA Collective Action <br> FED. R. CIV. P. 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Accura Health Ventures, LLC, American Healthcare Management Services, L.L.C., Accura Helathcare Holdings LLC, and American Healthcare Associates, Inc.'s (together, "Accura Healthcare") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Accura Healthcare's organization.

3. As a result, Accura Healthcare's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Jessica Gaul is one such Accura Healthcare worker.

5.      Accura Healthcare could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6.      But it didn't. Instead, Accura Healthcare used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7.      Accura Healthcare pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8.      Accura Healthcare made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9.      Accura Healthcare's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10.     Accura Healthcare's failure to pay wages to its workers in Iowa also violates the Iowa Wage Payment Collection Law (IWPCL), I.C.A. § 91A.

11.     Gaul brings this lawsuit to recover these unpaid overtime wages and other damages owed by Accura Healthcare to her and Accura Healthcare's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Accura Healthcare's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12.     This action seeks to recover the unpaid wages and other damages owed by Accura Healthcare to all these workers, along with the penalties, interest, and other remedies provided by federal and Iowa law.

## JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Accura Healthcare is headquartered in this District.

## PARTIES

16.     **Plaintiff Jessica Gaul** is a natural person.

17.     Gaul was, at all relevant times, an employee of Accura Healthcare.

18.     Gaul has worked for Accura Healthcare since before December 2021.

19.     Gaul worked for Accura Healthcare in Iowa.

20.     Gaul represents at least two groups of similarly situated Accura Healthcare workers.

21.     Gaul represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Accura Healthcare (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**[1]

22.     Gaul represents a class of similarly situated workers under Iowa law pursuant to Federal Rule of Civil Procedure 23. This "Iowa Class" is defined as:

---

[1] The FLSA Collective excludes those persons who opt-into or otherwise become a party plaintiff to *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC (N.D. Fla.).

**All current or former non-exempt employees of Accura Healthcare (including its subsidiaries and alter egos) who worked in Iowa at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members and Iowa Class members are referred to jointly as the "Similarly Situated Workers."

24. **Defendant Accura Health Ventures, LLC ("Accura Health Ventures")** is a domestic limited liability company.

25. Accura Health Ventures is headquartered in this District.

26. At all relevant times, one or more of Accura Health Venture's ultimate members were citizens of Iowa.

27. Accura Health Ventures may be served by service upon its registered agent, **Jason L. Giles, 700 Walnut St., Ste. 1600, Des Moines, IA 50309**, or by any other method allowed by law.

28. **Defendant American Healthcare Management Services, L.L.C. d/b/a Accura Healthcare Management Services ("American Healthcare Management Services")** is a domestic limited liability company.

29. American Healthcare Management Services is headquartered in this District.

30. At all relevant times, one or more of American Healthcare Management Servcies' ultimate members were citizens of Iowa.

31. American Healthcare Management Services may be served by service upon its registered agent, **Jason L. Giles, 700 Walnut St., Ste. 1600, Des Moines, IA 50309**, or by any other method allowed by law.

32. **Defendant Accura Healthcare Holdings LLC ("Accura Healthcare Holdings")** is a domestic limited liability company.

33.     Accura Healthcare Holdings is headquartered in this District.

34.     At all relevant times, one or more of Accura Healthcare Holdings' ultimate members were citizens of Iowa.

35.     Accura Healthcare Holdings may be served by service upon its registered agent, **Jason L. Giles, 700 Walnut St., Ste. 1600, Des Moines, IA 50309**, or by any other method allowed by law.

36.     **Defendant American Healthcare Associates, Inc. d/b/a Accura Healthcare of Iowa ("American Healthcare Associates")** is a domestic corporation.

37.     American Healthcare Associates is headquartered in this District.

38.     American Healthcare Associates may be served by service upon its registered agent, **Jason L. Giles, 700 Walnut St., Ste. 1600, Des Moines, IA 50309**, or by any other method allowed by law.

39.     At all relevant times, Accura Health Ventures has been doing business under the assumed name, "Accura Healthcare."

40.     At all relevant times, American Healthcare Mangement Services has been doing business under the assumed name, "Accura Healthcare."

41.     At all relevant times, Accura Healthcare Holdings has been doing business under the assumed name, "Accura Healthcare."

42.     At all relevant times, American Healthcare Associates has been doing business under the assumed name, "Accura Healthcare."

43.     Throughout this Complaint, Accura Health Ventures, American Healthcare Management Services, Accura Healthcare Holdings, American Healthcare Associates, and their subsidiaries and alter egos are referred to jointly as "Accura Healthcare."

44.     Accura Healthcare operates medical facilities throughout Iowa, Minnesota, Nebraska, and South Dakota.

45.     The facilities operated by Accura Healthcare include, but are not limited to:

- Accura Healthcare of Aberdeen
- Accura Healthcare of Ames
- Accura Healthcare of Aurelia
- Accura Healthcare of Bancroft
- Accura Healthcare of Carroll
- Accura Healthcare of Cascade
- Accura Healthcare of Cherokee
- Accura Healthcare of Cresco
- Accura Healthcare of Knoxville
- Accura Healthcare of Le Mars
- Accura Healthcare of Manning
- Accura Healthcare of Marshalltown
- Accura Healthcare of Milford
- Accura Healthcare of Newton East
- Accura Healthcare of Newton West
- Accura Healthcare of Odgen
- Accura Healthcare of Pleasantville
- Accura Healthcare of Pomeroy
- Accura Healthcare of Shenandoah
- Accura Healthcare of Sioux City
- Accura Healthcare of Spirit Lake
- Accura Healthcare of Stanton
- Butte Senior Living
- Faulkton Senior Living
- Grand Meadow Senior Living
- Green Lea Senior Living
- Karlstad Senior Living
- Lake Andes Senior Living
- Ridgeview Place Senior Living
- Shell Rock Senior Living
- Sterling Park Senior Living
- Woodlyn Heights Senior Living

46.     Accura Healthcare's subsidiaries and alter egos include, but are not limited to, the following:

- Grand Care L.L.C. d/b/a The Abington on Grand d/b/a Accura Helathcare of Ames
- Accura Healthcare of Aurelia, LLC
- Accura Healthcare of Bancroft, LLC d/b/a Accura Healthcare of Bancroft
- Baxter Care, L.L.C. d/b/a Accura Healthcare of Baxter d/b/a Baxter Healthcare Center
- Accura Healthcare of Carroll, LLC d/b/a Accura Healthcare of Carroll
- Accura Healthcare of Cascade, LLC
- Cherokee Care, LLC d/b/a Accura Healthcare of Cherokee d/b/a Country Side Estates
- Accura Healthcare of Cresco, LLC
- Knoxville Care Partners, LLC d/b/a Accura Healthcare of Knoxville d/b/a Griffin Nursing Center
- Accura Healthcare of Lake City, LLC
- Accura Healthcare of Le Mars, LLC
- Accura Healthcare of Manning, LLC
- Accura Healthcare of Marshalltown, LLC d/b/a Accura Healthcare of Marshalltown
- Accura Healthcare of Milford, LLC
- Accura Healthcare of Missouri Valley, LLC
- Newton Care, LLC d/b/a Accura Healthcare of Newton East d/b/a Heritage Manor Care Center
- Careage of Newton, L.L.C. d/b/a Accura Healthcare of Newton West d/b/a Careage of Newton
- Ogden Manor, L.L.C. d/b/a Accura Healthcare of Odgen d/b/a Odgen Manor
- Pleasantville Care Center, L.L.C. d/ba Accura Healthcare of Pleasantville d/b/a Pleasantville Care Living Center
- Accura Healthcare of Pomeroy, LLC
- Accura Healthcare of Shenandoah, LLC
- Hallmark Care, LLC d/b/a Accura Healthcare of Sioux City d/b/a Hallmark Care Center
- Accura Healthcare of Sioux Rapids, LLC
- Accura Healthcare of Spirit Lake, LLC d/b/a Accura Healthcare of Spirit Lake
- Accura Healthcare of Stanton, LLC
- Accura Healthcare of the Heartland, LLC f/k/a Accura Healthcare of the Midwest, LLC
- Accura Healthcare of Woodbine, LLC

47.   At all relevant times, Accura Healthcare operated as an alter ego of its facilities.

48.  At all relevant times, Accura Healthcare's facilities operated as its alter egos.

49.  At all relevant times, Accura Healthcare and its facilities operated as alter egos of one another.

50.  At all relevant times, Accura Healthcare exerted operational control over each of these facilities and any of its other facilites.

51.  At all relevant times, Accura Healthcare had the authority to set pay practices at each of these facilities and any of its other facilites.

52.  At all relevant times, Accura Healthcare substantially controlled the terms and conditions of employment for workers at each of these facilities and any of its other facilites.

53.  At all relevant times, Accura Healthcare had a common control and management of labor relations regarding employees at each of these facilities and any of its other facilites.

54.  At all relevant times, Accura Healthcare exerted operational control over its subsidiaries and alter egos.

55.  At all relevant times, Accura Healthcare substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

56.  At all relevant times, Accura Healthcare had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

57.  Accura Healthcare employed and/or jointly employed, with its subsidiaries and alter egos, Gaul and the Similarly Situated Workers.

58.  Accura Healthcare and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

59.     Accura Healthcare and its subsidiaries and alter egos are joint employers for purposes of Iowa Law.

## COVERAGE UNDER THE FLSA

60.     At all relevant times, Accura Healthcare was an employer of Gaul within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

61.     At all relevant times, Accura Healthcare was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

62.     Accura Healthcare was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

63.     During at least the last three years, Accura Healthcare has had gross annual sales in excess of $500,000.

64.     Accura Healthcare was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

65.     Accura Healthcare employs many workers, including Gaul, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

66.     The goods and materials handled, sold, or otherwise worked on by Gaul and other Accura Healthcare employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, and telephones, computers, and office supplies and equipment.

## FACTS

67.     Accura Healthcare operates a network of nursing and rehabilitation centers.

68. Many of Accura Healthcare's employees are non-exempt hourly and salaried workers.

69. Since at least 2021, Accura Healthcare has used timekeeping software and hardware operated and maintained by Kronos.

70. On or about December 11, 2021, Kronos was hacked with ransomware.

71. The Kronos hack interfered with the ability of its customers, including Accura Healthcare, to use Kronos's software and hardware to track hours and pay employees.

72. Since the onset of the Kronos hack, Accura Healthcare has failed to keep accurate track of the hours that Gaul and Similarly Situated Workers have worked.

73. Instead, Accura Healthcare has used various methods to estimate the number of hours Gaul and Similarly Situated Workers work in each pay period.

74. For example, Accura Healthcare issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

75. As a result of Accura Healthcare's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

76. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

77. Gaul is one of the thousands of employees affected by these pay and timekeeping practices.

78. Instead of paying Gaul for the hours she actually worked (including overtime hours), Accura Healthcare simply paid based on estimates of time or pay, or based upon

arbitrary considerations **other than** Gaul's actual hours worked and regular pay rates, in multiple workweeks.

79.     In some instances, Gaul was paid portions of the overtime shey worked, but the overtime rate she was paid was not at least 1.5 times her agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

80.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

81.     Accura Healthcare knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

82.     Accura Healthcare knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

83.     Accura Healthcare could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

84.     Instead of accurately tracking hours and paying employees their overtime, Accura Healthcare decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

85.     Even to the extent it did pay some overtime to affected employees, Accura Healthcare failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Accura Healthcare did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

86.     It was feasible for Accura Healthcare to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

87.     But it chose not to do that.

88.     In other words, Accura Healthcare pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

89.     Gaul is just one of the many Accura Healthcare employees who had to shoulder the burden of this decision by Accura Healthcare.

90.     Gaul was a non-exempt hourly employee of Accura Healthcare.

91.     Gaul regularly worked over 40 hours per week for Accura Healthcare.

92.     Gaul's normal, pre-Kronos hack hours are reflected in Accura Healthcare's records.

93.     Since the Kronos hack, Accura Healthcare has not paid Gaul for her actual hours worked each week.

94.     Since the hack took place, Accura Healthcare has not been accurately recording the hours worked by Gaul and its other workers.

95.     Even when Accura Healthcare has issued payment to Gaul for any overtime, the overtime is not calculated based on Gaul's regular rates, as required by federal law.

96.     Accura Healthcare was aware of the overtime requirements of the FLSA.

97.     Accura Healthcare nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Gaul.

98.    Accura Healthcare's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

99.    The full overtime wages owed to Gaul and the Similarly Situated Workers became "unpaid" when the work for Accura Healthcare was done—that is, on Gaul and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

100.    At the time Accura Healthcare failed to pay Gaul and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Accura Healthcare became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

101.    In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

102.    Even if Accura Healthcare made any untimely payment of unpaid wages due and owing to Gaul or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

103.    The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

104.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Accura Healthcare's acts and omissions resulting in the unpaid wages in the first place.

105.    Gaul and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Accura Healthcare under federal and Iowa law.

### COLLECTIVE ACTION ALLEGATIONS

106.    Gaul incorporates all other allegations.

107.    Numerous individuals were victimized by Accura Healthcare's patterns, practices, and policies, which are in willful violation of the FLSA.

108.    Based on her experiences and tenure with Accura Healthcare, Gaul is aware that Accura Healthcare's illegal practices were imposed on the FLSA Collective.

109.    The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

110.    These employees are victims of Accura Healthcare's respective unlawful compensation practices and are similarly situated to Gaul in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

111.    The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

112.    Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

113.    Accura Healthcare's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

114.    The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS

115.    Gaul incorporates all other allegations.

116.    The illegal practices Accura Healthcare imposed on Gaul were likewise imposed on the Iowa Class members.

117.    Numerous other individuals who worked for Accura Healthcare were were not properly compensated for all hours worked, as required by Iowa law.

118.    The Iowa Class is so numerous that joinder of all members of the class is impracticable.

119.    Accura Healthcare imposed uniform practices and policies on Gaul and the Iowa Class members regardless of any individualized factors.

120.    Based on her experience and tenure with Accura Healthcare, as well as coverage of the Kronos hack, Gaul is aware that Accura Healthcare's illegal practices were imposed on the Iowa Class members.

121.    Iowa Class members were all not paid all earned wages and benefits on their regularly designated pay periods, or within the allowed period of time after the periods in which they worked.

122.    Accura Healthcare's failure to pay wages in accordance with applicable law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Iowa Class members.

123.    Gaul's experiences are therefore typical of the experiences of the Iowa Class members.

124.     Gaul has no interest contrary to, or in conflict with, the members of the Iowa Class. Like each member of the proposed class, Gaul has an interest in obtaining the unpaid wages and other damages owed under the law.

125.     A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

126.     Absent this action, many Iowa Class members likely will not obtain redress of their injuries and Accura Healthcare will reap the unjust benefits of violating Iowa law.

127.     Furthermore, even if some of the Iowa Class members could afford individual litigation against Accura Healthcare, it would be unduly burdensome to the judicial system.

128.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

129.     The questions of law and fact common to each of the Iowa Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.      Whether Gaul and the Iowa Class members were paid all wages due within the periods of time allowed by Iowa law;

      b.      Whether Accura Healthcare's failure to pay wages due to Gaul and the Iowa Class members violated the IWPCL;

      c.      The amount and types of wages wrongfully withheld from Gaul and the Iowa Class members under the IWPCL; and

      d.      Whether Accura Healtcare's withholding of wages due to Gaul and the Iowa Class members was intentional.

130.     Gaul's claims are typical of the Iowa Class members. Gaul and the Iowa Class members have all sustained damages arising out of Accura Healthcare's illegal and uniform employment policies.

131.    Gaul knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

132.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO GAUL AND THE FLSA COLLECTIVE

133.     Gaul incorporates all other allegations.

134.    By failing to pay Gaul and the FLSA Collective members overtime at 1.5 times their regular rates, Accura Healthcare violated the FLSA. 29 U.S.C. § 207(a).

135.    Accura Healthcare owes Gaul and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

136.    Accura Healthcare owes Gaul and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

137.    Likewise, Accura Healthcare owes Gaul and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

138.    Accura Healthcare knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

139.    Because Accura Healthcare knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Accura Healthcare owes these wages for at least the past three years.

140.    Accura Healthcare's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

141.    Because Accura Healthcare's decision not to pay overtime was not made in good faith, Accura Healthcare also owes Gaul and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

142.    Accordingly, Gaul and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION— VIOLATIONS OF THE IWPCL AS TO GAUL AND THE IOWA CLASS

143.    Gaul incorporates all other allegations.

144.    The conduct alleged in this Complaint violates the IWPCL. I.A.C. § 91A.

145.    At all relevant times, Accura Healthcare has been an "employer" within the meaning of the IWPCL. I.A.C. § 91A.2(4).

146.    At all relevant times, Accura Healthcare employed Gaul and the Iowa Class members as "employees" within the meaning of the IWPCL. I.A.C. § 91A.2(3).

147.    The IWPCL requires an employer like Accura Healthcare to pay all wages due to employees at at least in monthly, semimonthly, or biweekly installments on regular, consistent, and pre-designated paydays. I.C.A. § 91A.3(1).

148.    The IWPCL requires an employer like Accura Healthcare to pay all wages due to employees within 12 days after the end of the period in which the wages were earned. I.C.A. § 91A.3(1).

149.     Wages under the IWPCL include any compensation earned by an employee for labor or services rendered by the employee, regardless of the method of calculation. I.C.A. § 91A.2(7)(a).

150.     Wages under the IWPCL include vacation, hoiday, sick leave, and severance payments owed under any agreement with the employee or an employer's policy. I.C.A. § 91A.2(7)(b).

151.     Wages under the IWPCL include any payments to the employee or a fund of the employee under any agreement with the employee or an employer's policy, including but not limited to medical, health, hospital, welfare, pension, or profit-sharing. I.C.A. § 91A.2(7)(c).

152.     Wages under the IWPCL include expenses incurred under a health benefit plan employee or an employer's policy. I.C.A. § 91A.2(7)(d).

153.     Within the applicable limitations period, Accura Healthcare had a policy and practice of failing to pay wages due to Gaul and the Iowa Class members.

154.     As a result of Accura Healthcare's failure to pay all wages due to Gaul and the Iowa Class Members, Accura Healtcare violated the IWPCL.

155.     Accura Healtcare's failure to pay the wages to these employees was intentional.

156.     Gaul and the Iowa Class members are entitled to recover their unpaid wages, liquidated damages, overdraft fees, attorneys' fees, costs, and all other legal and equitable relief provided under the IWPCL. I.C.A. §§ 91A.3(1)(b); 91A.8.

### RELIEF SOUGHT

Gaul prays for judgment against Accura Healthcare as follows:

a.      For an order certifying a collective action for the FLSA claims;

b.      For an order certifying a class action for the Iowa law claims;

c.      For an order finding Accura Healthcare liable for violations of federal wage laws with respect to Gaul and all FLSA Collective members covered by this case;

d.      For an order finding Accura Healthcare liable for violations of Iowa wage laws with respect to Gaul and all Iowa Class members covered by this case;

e.      For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Gaul and all FLSA Collective members covered by this case;

f.      For a judgment awarding all unpaid wages, liquidated damages, overdraft fees, and penalties under Iowa wage laws to Gaul and all Iowa Class members covered by this case;

g.      For an equitable accounting and restitution of wages due to Gaul and all FLSA Collective and Iowa Class members members covered by this case;

h.      For a judgment awarding attorneys' fees to Gaul and all FLSA Collective and Iowa Class members covered by this case;

i.      For a judgment awarding costs of this action to Gaul and all FLSA Collective and Iowa Class members covered by this case;

j.      For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Gaul and all FLSA Collective and Iowa Class members covered by this case; and

k.      For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

BRIAN P. GALLIGAN AT0002632
GALLIGAN LAW P.C.
The Plaza - Suite 5
300 Walnut Street
Des Moines, Iowa, 50309-2292
Telephone:  (515) 282-3333

Facsimile:  (515) 282-0318
E-mail:

*/s/ Ryan Morgan*

By: _____

**C. Ryan Morgan, Esq.**
FBN 24069719
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 16th Floor
PO Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Facsimile:    (407) 867-4791
Email: rmorgan@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**