**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION**

| | |
|---|---|
| JESSICA GAUL, *individually and on behalf of others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> ACCURA HEALTH VENTURES, LLC; AMERICAN HEALTHCARE MANAGEMENT SERVICES, L.L.C. d/b/a ACCURA HEALTHCARE MANAGEMENT SERVICES; ACCURA HEALTHCARE HOLDINGS LLC; and AMERICAN HEALTHCARE ASSOCIATES, INC. d/b/a ACCURA HEALTHCARE OF IOWA, <br><br> Defendants. | Case No. 4:22-cv-00154 <br><br><br> **DEFENDANTS' RESISTANCE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

Defendants, Accura Health Ventures, LLC; American Healthcare management Services, L.L.C. d/b/a Accura Healthcare Management Services ("AHMS"); Accura Healthcare Holdings LL; and American Healthcare Associates, Inc. d/b/a Accura Healthcare of Iowa (collectively, "Accura") submit this Resistance to Plaintiff's Motion for Class Certification.

## <u>TABLE OF CONTENTS</u>

I.   Introduction...........................................................................................................2

II.   Procedural posture. ...............................................................................................3

III.   Gaul has failed to meet the minimum standard for collective certification. .......................3

   A.   Accura Health Ventures did not employ Jessica Gaul or any of the class representatives.....................................................................................5

   B.   The class Ms. Gaul seeks to represent only includes Iowa entities. ................................7

1

C.   The class definition should accurately define the time period the class covers, and should only include a period beginning on December 11, 2021 and ending on December 17, 2021. ...................................................................................... 8

D.   Gaul has failed to present competent evidence of a common unlawful policy or practice because her hours were not estimated, so she is not similarly situated to the class she seeks to represent, and she has otherwise failed to allege an FLSA violation. ...................................................................................................... 9

IV.    Gaul's own circumstances demonstrate the individualized inquiries necessary which would make the class unmanageable. ............................................................... 13

V.     Gaul has not demonstrated that others are interested in joining this lawsuit. ................... 15

VI.    To the extent the Court conditionally certifies the class, notice by mail and posting is sufficient. ......................................................................................................... 16

VII.   Conclusion ..................................................................................................... 19

## I.    Introduction

After suffering an unexpected outage to their payroll system, Kronos, AHMS reacted as expeditiously as possible to make sure employees were paid. The Kronos ransomware attack, caused by no fault of AHMS, was a stressful and unfortunate situation. AHMS first discovered the outage on the morning of December 13, 2021 when payroll for a portion of AHMS's workforce was due four days later on December 17. Gaul, the only current representative of copycat litigation filed across the country, asserts that the FLSA was violated when her hours were estimated. Because Gaul's hours were never estimated, she cannot represent a class of "similarly situated" employees, and she has failed to identify a uniform unlawful practice or policy.

Also detrimental to certification, is that each of AHMS's facilities manually tracked and entered their own payroll information as a result of the Kronos outage until the system was back up. Gaul was also unique in that she was subject to a promotion that took effect on December 13, 2021 (the first business day of the Kronos outage). Gaul's own circumstances demand an individualized analysis of her pay which makes her an improper representative for a proposed

collective action. It is similarly anticipated that each individual's respective experience, including at which facility they worked, during the Kronos outage would result in a series of mini-trials.

This is one of the rare circumstances where the Court should decline conditional certification because the record evidence directly refutes Gaul's allegations that there was a common policy or practice of estimating hours. Additionally, the case involves individualized issues, and Gaul has not identified a single person who wishes to join this lawsuit. Gaul's motion should be denied.

## II.    Procedural posture.

On September 13, 2022, Defendants filed a focused and concise Motion for Summary Judgment seeking dismissal of the named Plaintiff Jessica Gaul's claims.  On November 23 2022, the Court denied Plaintiff Jessica Gaul's Rule 56(d) for an extension of time to resist Defendant's motion. ECF No. 29. Because that motion is still pending with the Court, the Court should decide Defendant's motion which was filed first in time, prior to considering Plaintiff's motion for certification. On November 23, 2022, Plaintiff's counsel indicated that they were not aware of any other class representatives that would replace Ms. Gaul in the event her claims were dismissed. As both parties agree, in the event the Court grants Defendant's Motion for Summary Judgment, then the case must be dismissed.

## III.    Gaul has failed to meet the minimum standard for collective certification.

When considering conditional certification, courts within the Eighth Circuit have applied a two-step approach. *Epstein v. Des Moines Register and Tribune Co.*, No. 4:15-cv-0453, 2017 WL 10350701, * 3-4 (S.D. Iowa Jan. 9, 2017). "Similarly situated" employees may proceed

collectively to recover for damages for violations of the FLSA's overtime provisions. 29 U.S.C. § 216(b).

To establish that conditional certification is appropriate, Gaul must provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist. *Epstein*, 2017 WL 10350701 at *4 (internal citation omitted). "Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Dietrich v. Liberty Square, LLC*, 230 F.R.D. 574, 576-77 (N.D. Iowa 2005).

Although the burden at the first step is more lenient, plaintiffs must present more than mere allegations—some evidence to support the allegations is required. *Bouphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) (internal quotation omitted). In *Bouphakeo*, the court elaborated:

> The supporting evidence should include "evidence that other similarly situated individuals desire to opt in to the litigation" because " '[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants.'" *Parker v. Rowland Express, Inc.,* 492 F.Supp.2d 1159, 1164–65 (D.Minn.2007) (quoting *Simmons v. T–Mobile USA, Inc.,* No. H–06–1820, 2007 WL 210008, at *9 (S.D.Tex. Jan. 24, 2007)). In addition to "whether potential plaintiffs have been identified," district courts outside of the Eighth Circuit have evaluated several other factors at this stage to determine the propriety of conditional certification, including "whether affidavits of potential plaintiffs have been submitted, whether there is evidence of a widespread discriminatory plan, and whether, as a matter of sound management, a manageable class exists." *Jimenez v. Lakeside Pic–N–Pac, L.L.C.,* 2007 WL 4454295, at *2 (W.D.Mich. Dec. 14, 2007) (citing *Olivo v. GMAC Mortg. Corp.,* 374 F.Supp.2d 545, 548 (E.D.Mich.2004)). In sum, "[c]onditional certification in the first step 'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.' " *Young,* 503 F.Supp.2d at 1229 (quoting *Davis v. NovaStar Mortg., Inc.,* 408 F.Supp.2d 811, 815 (W.D.Mo.2005)).

*Id*. at 892. The two-step approach allows plaintiffs to move for conditional certification at an early stage in the litigation but also allows defendants to move for decertification at the close of discovery. *Epstein*, 2017 WL 10350701 at *5.

In the first step of the analysis, the Court can consider all facts and evidence supporting the parties' motion. *Id*. at *5. "[N]either the remedial purposes of the FLSA, nor the interests of judicial economy [] would be advanced if we were to overlook facts which generally suggest that a collective action is improper." *West v. Border Foos, Inc.*, 2006 WL 1892527 at *9 (D. Minn. 2006); *See also Helmert v. Butterball* 2009 WL 5066759, at *7 (E.D. Ark. Dec. 15, 2009) ("Even at the notice stage of the analysis, a court may consider the pleadings and any affidavits that have been submitted to support or discredit the motion for certification."); *Carlson v. Leprino Foods Co.*, 1:05CV00798, 2006 WL 1851245, at *5 (W.D. Mich. June 30, 2006) ("Every now and then it makes sense to take in a panoramic view of a litigation before deciding how it can or should move forward.").

"Contested allegations in a complaint will not be considered evidence of whether or not there are similarly situated plaintiffs." *Ferguson v. Exide Techs.*, C18-2044-LTS, 2019 WL 1493711, at *4 (N.D. Iowa Jan. 31, 2019). Gaul cannot merely point to her own allegations; nor can she rely on mere speculation, conclusory allegations, or hearsay. *See Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005).  Because Gaul has failed to identify that she and others were subject to a common *unlawful* policy, and because she has not put forth any competent evidence that other plaintiffs wish to join the lawsuit, conditional certification must be denied.

### A.    Accura Health Ventures did not employ Jessica Gaul or any of the class representatives.

As an initial matter, Jessica Gaul's employer was not Accura Health Ventures. On May 5, 2022, Plaintiff filed an Original Class and Collective Action Complaint alleging that Gaul represents a collective of similarly situated workers under the FLSA defined as:

> All current or former non-exempt employees of Accura Healthcare (including its subsidiaries and alter egos) who worked in the United States at any time since the onset of the Kronos ransomware attack on or about December 11, 2021 to the present.

(ECF No. 1 ¶ 21). Thus, the proposed class Gaul was originally seeking to represent was all non-exempt employees who were employed from December 11, 2021 to May 5, 2022. Now, Gaul seeks to define her class as follows:

> All current or former non-exempt employees of Accura Health Ventures, LLC ("Accura") (including its subsidiaries and alter egos) who worked in the United States at any time during Accura's Kronos service outage, beginning on or about December 11, 2021, until the time that Accura regained full access to all Kronos products and services, and resumed normal employee timekeeping and payroll operations.

(ECF No. 25-1 p. 13). American Healthcare Management Services, LLC d/b/a Accura Healthcare Management Services ("AHMS") is the only one of the four named defendants who employed employees of an Accura affiliated entity. (ECF No. 18-1 ¶¶ 1-2, fn 1). Jessica Gaul was employed by AHMS. (ECF No. 18-1 ¶ 4). To the extent Plaintiff seeks conditional certification of a class of individuals who were "employees of Accura Health Ventures, LLC," no such class exists. Gaul submitted a corresponding affidavit stating she works for Accura Health Ventures, LLC. (ECF No. 25-2 ¶ 3). Since submission of her affidavit, Gaul ended her employment with AHMS. While Defendant does not feel inclined to do Plaintiff's work for her, at the very least, Plaintiff's class should be limited to the employer, American Healthcare Management Services, LLC, and the other entities should be dismissed. Alternatively, the Court is well within its right to deny conditional

6

certification given that Gaul cannot represent a class of individuals employed by Accura Health Ventures, LLC.

**B.      The class Ms. Gaul seeks to represent only includes Iowa entities.**

While Plaintiff's proposed class definition includes a group of employees who worked in the "United States," her motion for conditional certification clarifies that she is only seeking to represent employees at a handful of Iowa locations. In her Complaint, Plaintiff sought to cover 32 facilities she alleged were operated by Accura Healthcare,[1] and provided a list of an additional 27 entities/facilities which she alleged were "Accura Healthcare subsidiaries or alter egos" (many of which were duplicative of the 32 facilities previously identified). (ECF No. 1 ¶¶ 45-46). Plaintiff now clarifies she is not seeking to include facilities that used Simply Work and or CBiz Human Capitol Management pay systems (a total of 13 facilities), which would exclude the following:

1.  Aberdeen Health and Rehab, [South Dakota]
2.  Butte Senior Living, [Nebraska]
3.  Faulkton Senior Living, [South Dakota]
4.  Grand Meadow Senior Living, [Minnesota]
5.  Green Lea Senior Living, [Minnesota]
6.  Karlstad Senior Living, [Minnesota]
7.  Lake Andes Senior Living,
8.  Park Gardens Senior Living,
9.  Prairie View Senior Living,
10. Ridgeview Place Senior Living,
11. Shell Rock Senior Living,
12. Sterling Park Senior Living,
13. Woodlyn Heights Senior Living

(ECF No. 25-1 p. 13, fn 3). The remaining 21 facilities are all within the State of Iowa or as identified below are:

1.  Accura Healthcare of Ames          Payroll Group A
2.  Accura Healthcare of Aurelia       Payroll Group A

---

[1] Defined by Plaintiff as Accura Health Ventures, LLC, American Healthcare Management Services, L.L.C., Accura Healthcare Holdings LLC, and American Healthcare Associates, Inc.'s (together, "Accura Healthcare"). ECF No. 1 ¶ 1.

3.  Accura Healthcare of Bancroft        Payroll Group B
4.  Accura Healthcare of Carroll          Payroll Group B
5.  Accura Healthcare of Cascade         Payroll Group A
6.  Accura Healthcare of Cherokee        Payroll Group A
7.  Accura Healthcare of Cresco          Payroll Group B
8.  Accura Healthcare of Knoxville        Payroll Group B
9.  Accura Healthcare of Le Mars         Payroll Group A
10. Accura Healthcare of Manning         Payroll Group B
11. Accura Healthcare of Marshalltown   Payroll Group B
12. Accura Healthcare of Milford          Payroll Group B
13. Accura Healthcare of Newton East     Payroll Group B
14. Accura Healthcare of Newton West    Payroll Group B
15. Accura Healthcare of Ogden           Payroll Group A
16. Accura Healthcare of Pleasantville     Payroll Group B
17. Accura Healthcare of Pomeroy         Payroll Group A
18. Accura Healthcare of Shenandoah      Payroll Group B
19. Accura Healthcare of Sioux City       Payroll Group A
20. Accura Healthcare of Spirit Lake      Payroll Group B
21. Accura Healthcare of Stanton          Payroll Group A

The class definition should thus accurately reflect that the individuals worked in Iowa at one of

the above identified locations.

> **C.** **The class definition should accurately define the time period the class covers, and should only include a period beginning on December 11, 2021 and ending on December 17, 2021.**

While Plaintiff originally sought to include a temporal span of December 11, 2021 to May

5, 2022, Plaintiff now seeks to cover the period "beginning on or about December 11, 2021, until

the time that Accura regained full access to all Kronos products and services."[2] It is not clear from

Plaintiff's proposed definition when she seeks to end the class. As set forth in Defendant's

Statement of Undisputed Fact, the payroll period starting on January 2, 2022 and ending on January

15, 2022, with a pay date of January 21, 2022, was the last pay period impacted in some way by

the Kronos outage. (ECF No. 18-1 ¶¶ 23-24). The Kronos outage ended on January 17, 2022. (ECF

No. 25-4, p. 11). As a result, the class definition should clearly define that the class runs for

---

[2] Accepting Plaintiff's end date, the notice should include January 15, 2022 as the cutoff rather than Plaintiff's vague reference.

employees that worked hours from December 11, 2021 to a date certain. As set forth below, the challenged payroll practice as alleged by Gaul only covered *one pay* period for Payroll Group A. Thus, the appropriate class period, based on the challenged "practice" is from December 11, 2021 to December 17, 2021.

> **D.    Gaul has failed to present competent evidence of a common unlawful policy or practice because her hours were not estimated, so she is not similarly situated to the class she seeks to represent, and she has otherwise failed to allege an FLSA violation.**

Gaul originally plead that she is challenging Accura Healthcare's failure to keep accurate track of hours by issuing "paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods." (ECF No. 1 ¶¶ 73-74). Plaintiff has clarified that she is challenging "Accura Health Ventures, LLC's practice of estimating its employees' hours instead of paying them for the actual time they worked." (ECF No. 25-1 p. 1; *See also* ECF No. 25-1 p. 9 ("that Accura estimated their hours instead of paying them their exact hours worked, including overtime, in violation of the FLSA.")). Based on Gaul's own assertion, she seeks to represent a class of individuals who were harmed by AHMS's "practice of estimating its employees' hours instead of paying them for actual time they worked." Gaul's hours were never estimated, so she cannot represent such a class. *See, e.g., Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.,* 120 F.3d 893, 899 (8th Cir.1997) ("Here, Tacey is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class. Because Tacey is the only named representative in Count 4, the putative class lacks a representative on that count. Without a class representative, the putative class cannot be certified and its claims cannot survive.") (citations omitted).

It appears Gaul also takes issue with AHMS's manual tracking of employees' payroll by having employees record their hours on spreadsheets and then turn them into their supervisors.

(ECF No. 25-1 p. 2). On this second point, as explained below, Gaul has failed to identify any FLSA violation.

While the majority of Plaintiff's brief cites authority outside of this circuit, she at least acknowledges that she must show that the putative class members were together victims of a single decision, policy, or plan. (ECF No. 25-1 p. 4). A plaintiff cannot satisfy that burden with unsupported allegations of a policy or practice which violated the FLSA. *Harrison.*, 411 F. Supp. at 865-66 (portion of employee's affidavit referring to hearsay statements from 20-co-workers was not admissible for purposes of determining whether similarly situated); *Mares v. Caesars Entm't, Inc.*, No. 06-cv-60, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007) ("[A]lleged conversations" with "unidentified persons" insufficient to establish personal knowledge of policies and practices). At a minimum there should be some record evidence suggesting that there is a central policy or practice at issue or conditional certification would ultimately be futile, and certainly that challenged practice should be included in the class definition.

AHMS pays employees on two different two-week payroll cycles in order to stagger payroll dates, and Gaul was part of Payroll Group B. (ECF No. 18-1 ¶¶ 14-15). Of the 21 Iowa locations at issue, only 9 Iowa facilities were a part of Payroll Group A which estimated hours *for one pay period*,[3] as a result of the Kronos attack that was discovered on the Monday morning when payroll was due on Friday (and had to be finalized for payment run on Wednesday). (Declaration of Lisa Toti, App. 004[4]). Gaul was *not* a member of Payroll Group A. (ECF No. 18-1 ¶ 15; ECF No. 25-4, pp. 12-13). Gaul, who was a member of Payroll Group B, never had her hours worked estimated. *Id*.

---

[3] Running from November 28, 2021 to December 11, 2021 with a pay date of December 17, 2021.
[4] Hereinafter referred to as "Toti Decl."

10

Gaul's only "evidence" in support of her assertion is that "Accura told us they had initially used estimates of the pay we were due." (ECF No. 25-2 ¶ 12). Gaul's declaration defines "Accura" as Accura Health Ventures, LLC, an entity that never employed Gaul. (ECF No. 25-2 ¶ 3). It is thus difficult to ascertain who exactly Gaul contends made this statement and whether it could be used against AHMS as an admission. Gaul's declaration then goes on to assert broad conclusory allegations unsupported by the record: "As of this date, based on my review of my time and pay records, due to Accura's failure to properly calculate and pay my time after the Kronos outage, I was not timely paid all of the wages I was due, including overtime wages, in the pay periods when they were due." (ECF No. 25-2 ¶ 14). While Gaul vaguely alleges she was not paid all wages, it does not specify a failure to pay overtime wages applicable to her FLSA claim, and she fails to provide any specificity and further fails to tie a common practice or policy to her alleged pay shortage. The Declaration of Michelle Cornelius, the handwritten time sheets Gaul kept herself, and the payroll spreadsheet used to pay Gaul, all show that Gaul was paid for all hours actually worked, including at an overtime premium for all hours over 40 in a workweek.  (ECF No. 18-3, App. 4-13, 16-17). Gaul also received shift differential and shift pick-up bonuses that were applicable only to the Carroll, Iowa facility where she worked, and was newly promoted to a new and full-time position, which impacted her hourly rate and eligibility for paid time off just as the Kronos Outage started.  (ECF No. 18-1 ¶¶ 6, 63, 66; Toti Decl., App. 005). Gaul was not subject to the at-issue challenged pay practice, she is not similarly situated, and conditional certification should be denied.

For the remainder of Payroll Group A and Payroll Group B, payroll calculations were based on actual hours worked as tracked by employees on timecards. (ECF No. 25-4, pp. 12-13). Plaintiff asserts "supervisors would then input the handwritten spreadsheets into software spreadsheets."

(ECF No. 25-1 p. 2). While she alleges that this policy resulted in non-exempt employees not being fully paid wages, including overtime, they were owed, Plaintiff has failed to identify any challenged practice of the FLSA that would apply to the remainder of Payroll Group A or Payroll Group B simply based on the fact that employees tracked their hours by hand. (ECF. No. 25-1 pp. 11-12).

In *Andersen and Neleman v. Wells Fargo Fin., Inc.*, the court denied conditional certification where the plaintiffs alleged merely that the Defendants "expected" them to do certain tasks while off the clock. 4:11-CV-00085, 2012 WL 12871956, at *5 (S.D. Iowa Dec. 11, 2012). The plaintiffs stated "the evidence shows that Loan Officers were not being paid for all the time" they worked. *Id*. The court then noted, "this entire paragraph of assertions contains no citation to the record where there is supporting evidence for these statements." *Id*. The court further stated, "just as the Andersen plaintiffs before them, have provided little, if any, evidence that the Loan Officers are similarly situated or that Wells Fargo knew, expected, required, or suggested that these employees perform unpaid overtime." *Id*. Here, there is the same lack of evidence. Gaul has presented no evidence that simply by requiring manual timekeeping, that any employees were not compensated for overtime.

The current record makes clear that there are no "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violates the FLSA by failing to pay an overtime premium for hours worked over 40 in a week. (ECF No. 25-1, p. 6 (internal citation omitted)). Each facility had its own payroll calculation spreadsheet (with its facility-specific tracking of shift premiums and shift pick-up bonuses), which relied upon the individual timecards that were maintained at the facility level to calculate pay. (Carroll Payroll

Calculation Sheet, App. 007; Knoxville Payroll Calculation Sheet, App. 010). As AHMS

acknowledged to employees as part of its last update on pay related to the Kronos outage:

> When the system was restored, we then entered the hours and pay information back into the Kronos system, had W-2's processed, and made updates to employee records. Using the manual time records, payrolls were then processed in Kronos and compared to the net pay checks processed through AP. This process took a substantial effort. Each employee's situation is unique. You can view the final Kronos calculation in Pay History on your Employee Home Page by clicking on the date of the Pay Date. Additional individual reconciliation details are available by request.

(ECF No. 25-3 (emphasis added)). It appears Plaintiff is simply advocating that "sufficient

similarity" only means that a group of people are alleging some unclear and undefined violation

of the same law, in this case, the FLSA.

Because there is no common practice or policy that supports a FLSA overtime violation,

Plaintiff is not an adequate representative of Payroll Group A, has not demonstrated that anyone

in Payroll Group A seeks to be a member of the class, and Plaintiff concedes that she is not aware

of any other potential class representatives, Plaintiff's conditional motion should be denied in full

because she has failed to meet even the lowest of bars.

## IV.    Gaul's own circumstances demonstrate the individualized inquiries necessary which would make the class unmanageable.

The Court must also decline Plaintiff's motion for conditional certification because the

case would be unmanageable as a collective action. *See Gromek v. Big Lots, Inc.*, No. 10-c-4070,

2010 WL 5313792, at *2 (N.D. Ill. Dec. 17, 2010) (declining first-stage conditional certification

based on manageability concerns). A class is unmanageable where it involves fact-intensive

individualized inquiries and defenses which would result in a series of mini-trials.

AHMS's workforce involves individuals employed in different positions, at different

facilities, performing different job functions, with different schedules, and with varying pay

differentials and benefits. During the Kronos outage, AHMS worked with facility leaders to

13

implement manual timecards. (ECF No. 25-3). AHMS then paid employees based on actual hours worked and recorded. (ECF No. 25-3). *See Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV-770T-27MSS, 2006 WL 752831, at *5 (M.D. Fla. Mar. 23, 2006) (stating that "the court must consider whether the employees are similar with respect to their job requirements and pay provisions and the commonality of their claims"); *Robinson v. Dolgencorp, Inc.*, No. 5:06-cv-122-Oc-10GRJ, 2006 WL 3360944, at *1, *6-7 (M.D. Fla. Nov. 13, 2006) (denying class certification because putative class members did not perform the same duties as plaintiff, held different positions than plaintiff, and worked different hours from plaintiff); *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242, 249 (D.R.I. 1999) (named plaintiffs not similarly situated to opt-in plaintiffs where they had different managers and worked on different client contracts); *See also Epstein*, 42017 WL 10350701, at *6 (denying conditional certification where plaintiff asked the court to certify a class covering an undue number of individual employment decisions and newspaper did not have a company policy of requiring reporters to work uncompensated overtime). This is not a case where all employees were required to abide by an objective company policy, such as donning and doffing gear prior to working on an assembly line. Because each individual's hours were tracked manually and entered by their supervisor, there is no "central" policy being challenged.

Gaul assumes that because the payroll system went down that all employees suffered the same harm. That is not the case. Gaul was promoted effective December 13, 2021. ECF No. 18-1 ¶ 9. As a result, she did not have any earned PTO as of December 13, 2021. ECF No. 18-1 ¶ 44. She also did not participate in any benefits. (ECF No. 18-3, App. 5) Weekend shift differentials and shift pick-up bonuses, which Gaul earned during the Kronos outage, were also set at the facility level and often varied by facility. (Toti Decl., App. 005). In the Kronos reconciliation performed for Gaul, Kronos also improperly credited her with a $29 per hour weekend shift differential,

14

instead of $2 per hour, an issue which was unique to Gaul and one other employee.  (Toti Decl.,

App. 005; ECF No. 18-1 ¶ 67).

**V.      Gaul has not demonstrated that others are interested in joining this lawsuit.**

Gaul speculates that others would join the lawsuit based on her own incorrect assumption

that her hours were estimated. Gaul has failed to present a single affidavit from one of her

coworkers.  This means there is no named plaintiff or class representative from Payroll Group A.

To warrant a finding that similarly situated employees exist, a plaintiff's declaration must

at least allege facts sufficient to support an inference that he has *actual knowledge* about other

employees job duties, pay structures, hours worked, and whether they were paid for overtime

hours. *O'Neal v. Emery Fed'l Credit Union*, No. 1:13-cv-22, 2013 WL 4013167, at *9-10 (S.D.

Ohio Aug. 6, 2013) (denying conditional certification where plaintiff and opt-ins provided no

evidence of personal knowledge that they were similarly situated to others who did not receive

overtime compensation).

Gaul must present more than shear speculation that others wish to join her lawsuit.

*Butcher v. Delta Meml. Hosp.*, 5:12CV00241 SWW, 2013 WL 1668998, at *3 (E.D. Ark. Apr.

17, 2013) ("[T]his Court continues to find that plaintiffs must do more than speculate that

putative opt-in plaintiffs would be interested in joining a collective action. Without such a

requirement, the parties and the Court would waste valuable resources issuing notice to potential

plaintiffs only to find that the case cannot proceed as a collective action."); *Bouaphakeo*, 564 at

892 ("[O]ther's interest in joining the litigation is relevant to whether or not to put a defendant

employer to the expense and effort of notice to a conditionally certified class of claimants.")*; See

also Rowe v. Reynolds*, 4:19-CV-00256-JAJ, 2020 WL 6930454, at *4 (S.D. Iowa Nov. 9, 2020)

(permitting conditional certification where plaintiffs presented evidence in the form of sworn

interrogatories, sworn depositions, and sworn depositions of administrative employees regarding the exempt-employee policy); *Parker v. Rowland Express, Inc.,* 492 F.Supp.2d 1159, 1165 (D.Minn.2007) (stating that "a plaintiff must do more than show the mere existence of other similarly situated persons because there is no guarantee that those persons will actually seek to join the lawsuit").

In *Ferguson*, the district court for the Northern District of Iowa denied plaintiff's motion for conditional certification stating that, "[h]ere, the only evidence plaintiffs have provided to show the existence of a single, unlawful policy is the Hourly Employee Handbook and Brandt's deposition." 2019 WL 1493711, at *4. While the plaintiffs also included consent forms of thirteen employees, the consent forms only stated that individuals were not paid overtime compensation for all time worked in excess of 40." *Id*. The court criticized the consent forms because they provided no factual details about what the employees did to complete more than forty hours and did not contain any factual statements about donning and doffing uniforms or needing more than the time allotted. *Id*.  Here, Gaul's "evidence" is even less.

Given that AHMS did manually track employee hours in response to the Kronos outage at the facility level, Gaul has no personal knowledge of facilities other than the Carroll, Iowa facility. Gaul speculates that others wish to join the lawsuit without providing any admissible evidence the Court can consider. Given the circumstances here, and prior precedent in this district, the Court should require some evidence that other similarly situated individuals desire to opt into the litigation. Because Gaul has failed to do so, her motion should be denied.

**VI.    To the extent the Court conditionally certifies the class, notice by mail and posting is sufficient.**

In the event the Court permits conditional certification, the Court should permit the parties time to collaborate on the proper form of notice, consent, and script. While Defendant

addresses some of the issues with Plaintiff's notice below, time is better spent waiting to see how the Court rules, the manner in which the Court permits notice, and then the parties can meet and confer on the appropriate language. Accordingly, the Court should not approve the notice presented by Plaintiff.

The Court has discretion regarding the details of the notice. *Rowe*, 2020 WL 6930454, at *4. As set forth above, the notice should correctly identify the actual employer, should identify the facilities for which hours were estimated, should be limited to the dates of the Kronos outage for Payroll Group A during the first pay period, and should identify the alleged harm so that class members can determine whether they are entitled to recover damages. Without identifying the alleged harm, the notice is simply telling the class members they may have a legally actionable claim simply by being employed at the time of the Kronos outage.

Plaintiff's request for information relating to the class and for publishing/sending the notice four different ways is unnecessary and should be denied. Plaintiff's brief advocates for notice to be sent via email and text message, with the option to follow-up via phone. Her motion, on the other hand, requests an order that includes 1) mailing; 2) emailing; 3) text message; 4) a "reminder notice;" and 5) posting the Notice at its jobsites/offices for the entire opt-in period. (ECF No. 25, p. 2). AHMS does not maintain centralized text and personal email lists. (Toti Decl., App. 005). Email addresses and telephone numbers are inappropriate, and Plaintiff fails to explain why U.S. mail is insufficient in this case. *See Rowe*, 2020 WL 6930454, at *4 (rejecting Plaintiff's request for email address and telephone numbers where U.S. mail was sufficient). As a result, to the extent notice is issued, it should be sent via U.S. mail or posting.

Permitting Plaintiff to send notice via text, email, mail, and posting is excessive. Two forms of notice are sufficient and the court should not permit a "reminder notice" to all class

members. *See Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011) (finding that two methods of notice via mail and posting is sufficient); *See also Cervantes v. CRST Intl., Inc.*, 20-CV-75-CJW-KEM, 2021 WL 7185079, at *6 (N.D. Iowa Jan. 25, 2021) (permitting notice by mail and email held to be sufficient, with a reminder postcard, and holding that additional notice through the payroll system was excessive).

Plaintiff seeks to provide notice through a hyperlink. (ECF No. 25-6, p. 3). The Court should also deny such request as it lends itself to improperly tracking individuals who click on the link. The Court should reject Plaintiff's request to create a website for an opt-in class.

Plaintiff requests that Accura provide contact information for each class member within 10 days of the Court's order. (ECF No. 25, p. 2). Plaintiff seeks to have a 60-day notice period for putative collective members to join the case. (ECF No. 25, p. 2). To the extent the Court is inclined to certify the class, a 45-day notice period is more than sufficient. *See Putman*, 276 F.R.D. at 277 (permitting 45 days for opt-in notice period).

In the event the Court permits conditional certification, the notice the class seeks to send should be modified to accurately identify the class as set forth above and to include the harm alleged. (ECF No. 25-6 App. 1). The first sentence of the notice, beginning with "If you worked for Accura…" should be stricken, and should include only the class definition. Rather than stating that "a lawsuit was filed for unpaid and delayed wages," the sentence should accurately reflect that Gaul is challenging "estimating hours." Without that clarification, individuals may go through the steps to opt into the class only to find out that they are not members. The notice should include the end of the class period. Additionally, the notice should include the following statement approved by the court in *Rowe v. Reynolds*: "Although the United States District Court for the Southern District of Iowa has authorized sending this notice, the court has not considered

18

or made any decisions as to the merits of Plaintiffs' claims or Defendants' defenses and expresses no opinion on the merits of the lawsuit." 2020 WL 6930454, at *4. The notice for "Do Nothing" should also be modified, as the text overemphasizes Plaintiff's theory of the case and their right to recovery. That portion should include the language approved by the court in *Cervantes* which states: "If you do not want to take part in this lawsuit, you need not take any action. You are not required to respond in any way to this notice." 2021 WL 7185079, at *6.

The consent to join the lawsuit should similarly and accurately reflect the claims and procedural aspect of the case. The consent should identify the accurate employer, should include the challenged practice of estimating hours, should accurately reflect that the conditional class covers only the FLSA. (ECF No. 25-6 App. 2).

## VII.    Conclusion

Gaul presents an over-generalized and largely inaccurate factual rendition of AHMS's response to the Kronos ransomware attack that is likely convenient for copycat litigation but bears no resemblance to the facts of this case. Gaul's hours were never estimated, so she cannot represent a class of individuals subject to some theory of estimation in violation of the FLSA. Additionally, Gaul has not submitted any declarations or testimony that co-workers wish to join this litigation, and includes only her self-serving speculation.

Plaintiff has utterly failed to identify a common unlawful policy—at most, she's identified that all AHMS employees had to navigate the Kronos outage, and that is where the similarity ends. Plaintiff's motion for conditional certification should be denied.

Dated:  December 1, 2022

/s/ Katie Graham
Frank B. Harty    AT0003356
Benjamin P. Roach    AT0006588
Katie Graham    AT0010930
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-8045
Email: fharty@nyemaster.com
Email: bproach@nyemaster.com
Email: klgraham@nyemaster.com

**ATTORNEYS FOR DEFENDANTS ACCURA HEALTH VENTURES, LLC; AMERICAN HEALTHCARE MANAGEMENT SERVICES, L.L.C. d/b/a ACCURA HEALTHCARE MANAGEMENT SERVICES; ACCURA HEALTHCARE HOLDINGS LLC; and AMERICAN HEALTHCARE ASSOCIATES, INC. d/b/a ACCURA HEALTHCARE OF IOWA**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading into the ECF system, which will send notification of such filing to the following:

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
Email:  Matt@parmet.law

Brian P. Galligan
GALLIGAN LAW P.C.
The Plaza – Suite 5
300 Walnut Street
Des Moines, Iowa 50309-2292
Email: bgalligan@galliganlaw.com

C. Ryan Morgan
Angeli Murthy
MORGAN & MORGAN, P.A.
20 N. Orange Ave., 16th Floor
PO Box 4979
Orlando, FL 32802-4979
Email: rmorgan@forthepeople.com
        amurthy@forthepeople.com

ATTORNEYS FOR PLAINTIFF

                                        */s/ Katie L. Graham*